1101090 Airborne Express v. Daniel Fultz, Jr. Thomas Dell on behalf of Airborne Express. And this is a matter where the commission looked at the arbitrator's decision granting a permanent total award, and they said, well, you're wrong. This is not a medical case. And further, you're wrong about the back. The man's low back had nothing to do with this. But we're going to give him a permanent total because of his status as an odd lot victim. Well, why would he be an odd lot victim? Because of his back. What's wrong with his back? Well, we don't know. So basically, they took a decision that was based on no evidence, as they pointed out, because Dr. Genkeiko never said that this man was a permanent total. And they replaced it with another decision that is based on even less evidence. They say this gentleman can't find a job despite his unwitnessed but sincere attempt to find one. Why can't he find a job? Because of his severe pain that comes from where? And his limping around, constant use of a cane. He can barely get around. He can't sit. He can't stand. They had an FCE that said he could do all those things. And the only opinion that says there's anything wrong with his back is Dr. Genkeiko. And if you look through his records, there's no examination. There's no findings. There's no diagnosis. There's no nothing. Is there any effect of the arbitrator's decision, the commission's decision, and the remand to the arbitrator? There's nothing, no appeal from the commission's first decision. The first issue was this gentleman had a cervical disc in, I think it was, 96. And then he had another one without an overt accident later on in 2002, November of 2002. And the issue then was whether or not it was repetitive trauma. And it went up on a 19B. And the commission ruled, okay, it's compensable, it's repetitive trauma. And at that point we accepted that. At that point you what? At that point we accepted it. So the first part of the findings affect as to the accident itself and that it resulted in a disc at C5-6 and followed by a repair of the herniation and a fusion from C5-6 and C6-7, those performed by Dr. Quinn Regan. We're accepting that. So that is why we're not suggesting that this gentleman's case be reversed. We're suggesting that he should have either a wage differential or he should have a percentage of man as a whole. Well, you've obviously alluded to the fact you don't believe there's sufficient evidence in the record to support the Adelot determination. However, didn't the claimant present evidence in the form of testimony from vocational expert Entenberg that established his medical condition precluded, was her determination his finding a job in a study of the labor market, based on her evaluation of the medical records, the FCE that you referred to, didn't she opine that? She opined that he was, as far as the Adelot and the job search, she said specifically it didn't matter if he looked for five jobs or 5,000 contacts. That didn't matter because he was medically a permanent toll. And that was based entirely upon Dr. Genchayko. And Dr. Genchayko, as the commission then said, never said he was a permanent toll, totally disabled. So therefore, the only basis, if you back up to the axiom that an expert's opinion is only as valid as the facts upon which it's based, her opinion was based upon Dr. Genchayko's, what she thought was his opinion. The commission said, no, that's not his opinion. So if that's not his opinion, then her opinion has to fall. So how do you square that with the well-established rule? It's still up to the commission to adjudge the weight and sufficiency of the evidence, isn't it? Because they just said that the evidence, that that evidence did not support the finding, and therefore it can't support her opinion. She never said he was an Adelot. She said he was medical. The commission then turned around and said, he is not a medical, he's an Adelot. So she is left with no opinion at all because she did not have an alternate opinion. She didn't acknowledge that there's no basis for its finding? Is that what you're saying they did? The commission is saying there's absolutely no basis for that finding. See, that's what's unusual here because then they go back and they talk about the Adelot, and the Adelot is all about his back. He says he can't stand. He can't drive. He can't walk. His own doctor, Dr. Reagan, said as far as driving, there's no restriction on driving except turning his head. And that's because Dr. Reagan said, didn't say he couldn't drive. He said that he lost 14 to 16 percent of range of motion in turning his head. But he could still drive. And this man says, I can't even ride in a car, let alone drive in a car. I can't possibly work. I have a cane all the time. And he keeps saying, and counsel keeps saying in his brief that it was undisputed that it was prescribed by Dr. Gankayko. Dr. Gankayko mentions the cane twice. He says on December 7, 2005, he said, he quotes the petitioner as saying he has low back pain and needs a cane for stability. So he's not prescribing. He's just a scribe. He's writing down what the petitioner just told him. And the doctor never goes on to say, and I agree that he needs a cane because Dr. Gankayko never has any diagnosis at all. He just puts down low back pain, refills his prescriptions. On your evidence, what evidence establishes that an opposite conclusion from that drawn by the commission is clearly apparent? The only evidence in the record concerning his neck comes from his own treating physician, and that is Dr. Reagan's testimony at 00172. Question. There is no evidence there in the MRI that supported his continued complaints. Is that correct? Answer correct. Dr. Reagan, who's a board-certified orthopedic surgeon who did the actual work, said there's nothing wrong except for the restrictions he put on him. And he didn't put restrictions on him. And Dr. Gankayko, with absolutely no testing or examination, diagnosed failed cervical fusion. And then he switches to his low back and says, well, he's got low back pain. But he never, there's no diagnosis anywhere in his records as to what it is. He just says low back pain. In one other spot he says, uses a cane. And the petitioner testified he uses the cane all the time. He has to have the cane. Dr. Gankayko reports that he has sporadic exacerbations of his low back pain and uses a cane on those occasions. So even he doesn't agree with him. But the whole question is, is Gankayko's testimony of any value whatsoever, there's no examination. There's no findings anywhere in his record aside from repeating the man's subjective complaints. So who's supposed to determine if the doctor's findings are credible? Isn't it the commission's job? There has to be some evidence. What is the evidence? You can't just say the doctor says his back hurts. Well, his bartender could say his back hurts. Because he said it hurts. Does the bartender have a medical degree? It doesn't matter. If that's all it is, if I go into the doctor and the bartender and say my low back hurts, and neither one of them performs an examination, either the bartender or the doctor, and then turns around and reports that I have low back pain. So what did Gankayko ostensibly base his opinion on, his diagnosis on? He never looked at any records, never saw the claimant, nothing? No. The guy would come in. He'd say my low back hurts. And he'd say, okay, here's a refill on your pills. So he's a treating physician, right? No. Not really. He refills his prescriptions. There's no treatment. There's no examination. There's no diagnosis. If he's a treating physician, he'd have a diagnosis. And then the commission could look at his diagnosis and say, okay, this is pretty thin, but here's a diagnosis, and we'll accept it. And in any case, they say specifically the low back isn't a work-related injury anyway. And the only examination there is actually of this man's low back was he complained about low back pain to one of the respondents examining physicians, Dr. Skoletsky. He did X-rays, and he found mild degeneration at L2 and 3, not unusual for a man of 41 years old. And that was it. And he went to Dr. Gamayan, and Dr. Gamayan said that the low back complaints are not organic. He's using the cane in the wrong hand, and there's nothing wrong with his low back. And the interesting thing is Dr. Genkeiko said on December 7, 2005, that this man needed a cane for his low back, and he had low back pain. This is two and a quarter years after he had sent in the disability papers to the Illinois Department of Human Services to get started on his disability payments, which he did in September of 2003 when he was still treating with Dr. Reagan. The man has restrictions which are supported by his treating physician, the surgeon, the orthopedic surgeon who did the work, and the FCE that were done. And Dr. Gamayan also examined him, and he gave him slightly less severe restrictions, but restrictions nonetheless. Now, in that case, if the commission chooses to use the more restrictive treating physician, I have no problem with that. That's what they're going to do. But to come out of left field and pick the restrictions or the opinion of a doctor who doesn't even have a diagnosis for him, doesn't even suggest where in his low back his pain is, then you've gone completely off the reservation. You've got absolutely no evidentiary support whatsoever for this opinion. The man has restrictions in his neck, and he has lifting. He can do light to sedentary work with a 15-pound restriction and no repetitive overhead work. That's what Dr. Reagan said. And Ms. Ettenberg did not even look at jobs. She didn't look at anything at all. She said, well, based on Dr. Gamayan, he can't work at all, so why bother even thinking about a job? He can't ride in a car. There's no medical evidence he can't ride in a car. He wouldn't go to jobs. Every time we lined him up with job fairs or interviews, he never went for all sorts of reasons. I can't ride in a car. Where's the evidence he can't ride in a car? There's absolutely nothing in the evidence. And the commission says specifically that everything the arbitrator said about his low back being work-related was out, that it's just his technique. Well, you keep saying there's no evidence to support any of this. But on appeal, when you're seeking to overturn the commission's decision, who has the burden to prove something? Well, the question is, is there any evidence? It's a manifest way of the evidence. And I would say when there's zero evidence that the other side must prevail. There is no evidence, period. The commission looked at the way the arbitrator did it and said, there's no evidence for any of this, but we're going to affirm it. On another reason, but we're not going to put down what that reason is, we're going to put down odd lot. There's no evidence of an odd lot, because the only thing wrong with him is his neck. It gives him restrictions for that. And our expert says he could work for that. Ms. Edinburgh didn't look at all for him. So there's no evidence on odd lot at all, period. Zero, none, nada. Because she didn't look in the issue at all. She went strictly on the medical. And the commission says it's not medical. So what's left? There is no evidence. And as when you get to manifest way of the evidence, no evidence can't win. Please support counsel Steve Seidman for the petitioner. I think I'm hearing a different record than what I see or what I've seen before in this particular case, being somewhat familiar with it. Remember, please, there were two decisions. The first, 19B, was on February 18th, 2004, and April 12th, 2004. At least that was when the trial occurred. And during those decisions, previous to that decision, at least there had been an FCE of October 30th, 2003, and subsequently reviewed by Dr. Regan, who said, as counsel pointed out, there was a 15 to 20-pound restriction solely on the neck. Also in that decision, the arbitrator did rule that the back was related, the low back, although the primary problematic area was the cervical area. And that's what prevented the petition from working. We went in for vocational benefits as well as prosecuting the accident. And that was ruled upon in our favor and appealed to the commission. And that was the end of the analysis. That becomes the law of the case. So if we look at it in a vacuum, the law of the case is that Dr. Regan, as of the date of the decision of 4-26-05, said this man was limited at his work, had work restrictions, and over the course of the next several years, petitioner looked for work within those restrictions as the law requires him to do. Now, I think we're mixing apples and oranges here because counsel keeps on talking about what Dr. Ganayko said versus what Dr. Regan said. Whatever Dr. Regan said is the law of the case because it was prior to the first 19B. It was unappealed. It didn't get appealed past the commission. And the law of the case gives him restrictions. What the commission said is that the back was a totally incidental thing. And I just had it out, but I think I've lost it. Basically, the commission also disagrees that it was a permanent toll because they say that Dr. Ganayko should not have been classified as disabled under that scenario. But the commission also disagrees with the arbitrator's conclusion that the accident resulted in lower back injuries, but notes that this does not in any way affect the ultimate award. Now, whether or not the back was the law of the case or not, it's really irrelevant because it has no place. After the restriction was placed because of this accident, the petitioner looked for work repeatedly. He looked for about 150 applications, very detailed. Before the first 19B, subsequent to that, he did 300 applications within a period of time. Six months transpired after the B when vocational rehabilitation was ordered by the arbitrator. Six months went by with no vocational rehabilitation. Thereafter, Ms. Hoyt comes on the scene as a vocational rehabilitation counselor. She gets him not one interview. Then this other guy, Persick, comes and he gets four interviews, of which the petitioner goes to. He doesn't get those jobs. And the big issue is, why did they cut him off? Because there were two job fairs, or a job fair, over two days that the petitioner didn't attend. And as the evidence showed and as the arbitrator believed and the commission affirmed, that this petitioner told Mr. Persick, the voc rehab person, I can't drive that far, I'm not going to go. Or, I can't go, would you please pick up two applications, or applications from both of those job fairs. Right away, they cut him off. They said that was not cooperation. Which is why the penalties. There has been a total ignoring of this person's condition, of his restrictions. He is an odd lot, because what happened is the burden shifted him to have to look for jobs. He looked for jobs. Ms. Entenberg simply says there's no stable market that exists for this particular individual. And at the end of the day, he is an odd lot, permanent total. So the back is nothing more than a red herring, even though I must say it is the law of the case that the back was causally related. Thank you. Thank you. As counsel pointed out, there have been numerous hearings on this case. And at each one of them, the petitioner claimed that he had this list of jobs. And he was always asked for it and said, oh, I didn't think I needed to bring it. And at the next hearing, he had that list. Oh, I didn't think I needed to bring it. This is a lot like Senator Joe McCarthy's list of communists in the State Department. We hear a lot about it, but it's doubtful it exists. All we do know is that whenever there was job searches or even an interview with Ms. Entenberg where there were actual witnesses, for some reason, he couldn't go. And if he went to one, he said, oh, I can't raise my arms. Well, his doctor never said he couldn't raise his arms to stack the cooler at the mini mart. And he has to take his cane with him everywhere. We haven't seen it. There's no evidence of this cane at all. And the law of the case is, the last thing that the commission, the last word by the commission on this is, the commission also disagrees with arbitrator's conclusion that the accident resulted in lower back injuries. If it didn't result in lower back injuries, why are we here? Is he using a cane and unable to drive in a car because of his neck? He has restrictions on his neck. He should get an award based upon restrictions on his neck. He shouldn't be sent away with nothing. But on the other hand, he's not a permanent total. Ms. Entenberg said he's a permanent total because of his medical condition. The commission said, no, he's not. He's an odd lot because of, but they never say why. And we know it's because he has to have a cane. He can't ride in a car. He can't get transportation, none of which is supported by any of his doctors. It's all because of the pain in my low back and so on. And any pain in his neck, Dr. Reagan, his treating physician, said there's no support for that anywhere in the medical record. I can't see any reason for any of this. The fact of the matter is that the commission decision is based on no evidence, let alone the manifest weight of the evidence. Thank you. The court will take the matter under advisement for disposition.